UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

DAVID LEE BABCOCK,

                        Plaintiff,

    v.                                        Action No. 3:10−CV−431

COMMISSIONER OF SOCIAL
SECURITY,

                        Defendant.

MEMORANDUM OPINION

This matter comes before the Court on David Lee Babcock's objections to the magistrate judge's Report and Recommendation (R&R) affirming the Social Security Commissioner's denial of his application for Social Security Disability and Supplemental Security Income payments. The Commissioner's decision to deny benefits was based on a finding by an Administrative Law Judge ("ALJ"), who determined that Babcock is not disabled according to the Social Security Act. Judge Dohnal recommends that the Court deny Babcock's Motion for Summary Judgment, grant the Commissioner's Motion for Summary Judgment, and affirm the Commissioner's decision.

Babcock objects that (1) the ALJ assigned too little weight to the testimony of a treating nurse and a treating physician, (2) assigned too much weight to the testimony of nonexamining physicians and psychologists, and (3) should not have concluded that Babcock failed to follow physicians' treatment directives without justifiable cause. Babcock also provides a new psychologists' report not presented to the ALJ or Judge Dohnal.

Background

There is a five-step analysis conducted for the Commissioner by the ALJ to determine if an applicant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520. The ALJ considers whether an applicant (1) is performing substantial gainful activity (SGA); (2) is severely impaired; and (3) has an impairment that is at least as severe as one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App. 1. Before proceeding to the fourth step, the ALJ must determine the applicant's residual functioning capacity (RFC), taking into account all of the applicant's impairments. 20 C.F.R. §§ 404.1520(e), 416.920(e). An applicant's RFC is his capacity to perform sustained physical and mental activities in spite of his limitations. After determining an applicant's RFC, the ALJ considers whether the applicant (4) could continue performing work that he did in the past; and (5) could perform any other job in the national economy. 20 C.F.R. §§ 416.905, 416.920. *See Rogers v. Barnhart*, 216 Fed. App'x 345, 347–48 (4th Cir. 2007). If, at any step of that analysis, the ALJ is able to determine that the applicant is not disabled, the inquiry must stop and the ALJ must conclude the applicant is not disabled. 20 C.F.R. § 404.1520(a)(4). The applicant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner if the analysis reaches step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

In this case, the ALJ found that Babcock is not disabled at the fifth step of the analysis. He found that (1) Babcock had not performed substantial gainful activity since the alleged onset of the condition, (2) he had severe impairments,[1] and (3) the impairments were not listed in 20 C.F.R. Part 404, Subpart P, App. 1. (R&R at 6.) The ALJ further found that (4) Babcock has the RFC to perform light work, except that his dizziness prevents him from working around

---

[1] Babcock suffers from obesity, degenerative disc disease of the lumbar spine, alcohol abuse, non-insulin dependent diabetes mellitus, and coronary artery disease status post-myocardial infarction and stenting. (R. at 16-17.)

hazards such as unprotected heights and moving machinery. (R. at 17-20.) The ALJ concluded that these limitations prevented Babcock from performing his past relevant work as a press operator because of the level of exertion required. Finally, after considering Babcock's age, education, work experience, and RFC, the ALJ concluded that Babcock could perform other jobs that exist in significant numbers in the national economy. (R. at 20.)

Judge Dohnal found that substantial evidence supported the ALJ's decision. Specifically, Judge Dohnal concluded that substantial evidence supported the ALJ's RFC analysis, his assessment of the treating physicians' opinions and Babcock's testimony, and the ALJ's conclusion that Babcock could perform other work-related tasks. Proceeding *pro se*, Babcock objects to Judge Dohnal's R&R, arguing that the ALJ should have assigned greater weight to the testimony of his nurse, assigned too much weight to the examination of Dr. Nancy Powell and other nonexamining physicians, and improperly concluded Babcock failed to follow physicians' treatment recommendations.

## Standard of Review

The Court may review a denial of benefits by the Commissioner, 42 U.S.C. § 405(g), but it must accept the Commissioner's findings of fact if they are supported by substantial evidence and were reached by applying the correct legal standard. *Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006) (stating that a court must apply that standard to findings of fact by an ALJ). The "substantial evidence" standard is more demanding than the "scintilla" standard, but less demanding than the "preponderance" standard. *Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001). Thus, a finding is supported by "substantial evidence" if it is based on "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Johnson v.*

3

*Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). And, if "conflicting evidence allows reasonable minds to differ as to whether an applicant is disabled," the Court must defer to the Commissioner's decision. *Id.* The Court must consider the evidence as a whole, such that it must take into account any evidence from the record that detracts from the weight of the Commissioner's judgment. *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). In determining whether a decision satisfies that standard, the Court may not weigh conflicting evidence, evaluate the credibility of evidence, or substitute its judgment for the Commissioner's findings. *Mastro*, 270 F.3d at 176. The district court must reverse the agency's decision if the ALJ has made an error of law or his decision is not supported by substantial evidence. *Coffman v. Bowen*, 829 F.2d 14, 517 (4th Cir. 1987).

### Analysis

A. **Judge Dohnal applied the correct legal standard in evaluating the ALJ's RFC judgment.**

> 1. *Judge Dohnal properly concluded substantial evidence supported the Commissioner's decision to assign Nurse Clayton's testimony little weight.*

Babcock contends Judge Dohnal applied the incorrect standard in evaluating the weight the ALJ assigned to the opinions of Melissa Clayton, a nurse practitioner who treated Babcock between 2001 and 2008. As a prerequisite for determining whether the applicant can continue the work he did in the past, the ALJ must make a finding regarding the applicant's RFC. 20 C.F.R. § 416.920(e), (f). The ALJ's RFC determination must take into account all the relevant evidence in the record of the applicant's case. 20 C.F.R. § 416.945. The ALJ must analyze the applicant's medical records to determine whether an impairment significantly limits the

4

applicant's ability to do basic work activities. 20 C.F.R. § 416.912(f). The ALJ must compare multiple opinions if the record contains more than one opinion, and the ALJ must assign respective weights to any inconsistent opinions. 20 C.F.R. §§ 416.927(c)(2), (d). The ALJ need not give a medical opinion controlling weight, or accept it at all, when it is inconsistent with other evidence or is not well-supported. 20 C.F.R. § 404.1527(d)(3)-(4). *See Jarrells v. Barnhart*, 2005 WL 1000255 at *4 (W.D. Va. Apr. 26, 2005).

The record reflects that Nurse Clayton provided a significant amount of Babcock's medical treatment and offered many of the medical opinions Babcock's application relied on. (R. at 256, 262, 264-69, 271-72, 274-76, 280-82, 291-94, 296, 317-23.) For example, in letters dated July 21 and October 25, 2008, Nurse Clayton noted that doctors in her office managed Babcock for several medical conditions and offered her opinion on the severity of Babcock's conditions and the resulting limitations on his work capacity. (R. at 317, 345-46.)

The ALJ assigned "very little weight" to Nurse Clayton's judgment that Babcock's back pain limited his work-related function. He reasoned that Babcock's "own self reports," rather than objective evidence, formed the basis of Clayton's judgments. (R. at 19.) For example, Nurse Clayton emphasized the degenerative changes in Babcock's back between 2001 and 2008. (R. at 19.) On the basis of these changes, Nurse Clayton claimed Babcock could not sit for more than an hour, walk more than three hundred feet, or stand more than ten minutes. (R. at 318.) The ALJ found Babcock's degenerative changes "mild" as reflected in Babcock's x-rays. (R. at 19, 345.) The ALJ further noted that Babcock's testimony about his own physical activity contradicted Nurse Clayton's judgments about his physical limitations. (R. at 19, 151-58.)

The ALJ also noted that no physician who treated Babcock offered an opinion regarding Babcock's ability to perform work-related functions, implying that he discounted Nurse

5

Clayton's judgments because she is not a licensed physician. (R. at 19.) Babcock argues Nurse Clayton is more credentialed than a typical nurse and therefore permitted to offer opinions to establish an impairment. Babcock is incorrect. As it relates to the impairments Babcock claims, 20 C.F.R. § 404.1513(a)(1) allows the Commissioner to consider evidence provided from a licensed physician. Nurse Clayton is not a licensed physician, so the ALJ was permitted to discount her opinions.

Babcock also intimates that that the ALJ should have assigned Nurse Clayton's opinions significant weight because Dr. Andrew Rose signed some of the forms containing Nurse Clayton's judgments. In fact, Nurse Clayton's signature is the only one on the great majority of Babcock's medical records. (R. at 256, 262, 264-69, 271-72, 274-76, 280-82, 291-94, 296, 317-23.) Dr. Rose signed two letters cosigned by Nurse Clayton recommending that Babcock should be eligible for disability coverage, but a finding of disability is reserved exclusively for the Commissioner. 20 C.F.R. § 404.1527(e)(1), (3); SSR 96-5p, 1996 WL 374183. (R. at 345-46.) Dr. Rose signed one record from July 2006, in which he concluded Babcock's blood pressure was "okay" and Babcock was "stable and asymptomatic" with respect to his coronary artery disease. (R. at 278.) Since Nurse Clayton's opinions are entitled to little weight for reasons explained previously, and Dr. Rose's opinions do not support a conclusion of disability, Judge Dohnal applied the correct test in evaluating the ALJ's consideration of Dr. Rose's and Nurse Clayton's opinions.

    2. *Judge Dohnal properly concluded substantial evidence supported the ALJ's decision to weigh the opinions of nonexamining physicians and psychologists.*

Babcock objects to the weight the ALJ assigned to the opinions of several physicians who never examined him personally. As part of his review of Babcock's application, the

Commissioner employed several outside medical professionals to review Babcock's records and make recommendations on his RFC. (R. at 222-34, 297-303, 312-16.) Babcock suggests these recommendations are invalid, since the doctors never examined him personally. However, applicable regulations permit the ALJ and other reviewing officials to seek the opinions of nonexamining physicians and psychologists in order to determine the applicant's work capabilities. *See* 20 C.F.R. § 404.1513. The Commissioner is required to evaluate these opinions and assign them a particular weight according to the degree to which the professionals explain their opinions. *See* 20 C.F.R. §§ 404.1527(d), 416.927; SSR 96-6p, 1996 WL 374180. Therefore, the ALJ was entitled to consider the opinions of nonexamining physicians and psychologists in determining Babcock's RFC.

> 3. *Judge Dohnal properly concluded substantial evidence supported the ALJ's conclusion that Babcock failed to follow treatment recommendations.*

Babcock objects to Judge Dohnal's conclusion that the ALJ appropriately considered Babcock's own treatment efforts. In determining an applicant's RFC, the ALJ considers whether treatment prescribed by the applicant's physician can restore his ability to work and whether the applicant has followed that prescribed treatment. 20 C.F.R. §§ 404.1530, 416.930. The Commissioner may find an applicant has failed to follow prescribed treatment where the applicant's impairment prohibits him from engaging in any SGA, the impairment has lasted for twelve continuous months, treatment is clearly expected to restore any SGA, and the evidence discloses the applicant has refused to follow prescribed treatment. SSR 82-59, 1982 WL 31384, at *1. If the applicant fails to follow treatment requirements, absent justifiable cause, the Commissioner may deem him not disabled. Justifiable cause includes the applicant's inability to afford prescribed treatment that he is willing to accept, where community resources are

7

unavailable. The applicant must exhaust all treatment resources, including clinics, charitable agencies, and public assistance agencies. SSR 82-59, 1982 WL 31384, at *4.

The ALJ found that Babcock was "extremely sporadic" in seeking treatment for his various limitations. He further noted that Babcock was not compliant with diet recommendations and follow-up appointments after being diagnosed with diabetes. (R. at 19.) Babcock suffered a heart attack and underwent angioplasty in September 2002. (R. at 193-210.) Babcock visited his physician twice in the following months but only once or twice a year through 2005, at which time his physician noted his cardiovascular health was good. Babcock's treating physician, Dr. Mark Johns, observed that Babcock smoked two packs of cigarettes a day and binged on alcohol on weekends. Dr. Johns told Babcock these activities likely contributed to the increase in his blood pressure and consistently advised Babcock to stop smoking and drinking. (R. at 211-18.) Dr. Johns also encouraged Babcock to improve his diet, since his high weight raised his blood pressure. (R. at 219-20.)

Babcock obtained further treatment between 2006 and 2008. The primary reason for the treatment remained his blood pressure problems. (R. at 253-82.) Records indicate Babcock's blood pressure fluctuated during this period and that he suffered no chest pain, shortness of breath, extremity swelling or edema, headaches, or vision changes. (R. at 281.) At the same time, Babcock's treating physician recommended he see his physician more than once every six months. (R. at 281.) Babcock's physician frequently noted he drank heavily and smoked up to three packs of cigarettes daily, and additionally urged Babcock to improve his diet and exercise habits. (R. at 254, 265, 269, 278, 281-82.) In July 2008, in Babcock's last visit on record, the physician noted Babcock's blood sugar was "horrible," his diet was "very poor," he continued to smoke, and he needed to "get aggressive" about his diet. (R. at 320.) Babcock's lackadaisical

approach to obtaining treatment, his physician's repeated recommendations about his personal habits, and Babcock's apparent failure to heed those recommendations contributed to the ALJ's finding that Babcock had an RFC to perform light work. (R. at 17.)

From this evidence, Judge Dohnal decided the ALJ had substantial evidence to conclude Babcock had failed to follow his physician's prescribed treatment. Judge Dohnal considered Babcock's treatment history mentioned above as a basis for the ALJ's determination of Babcock's RFC. Judge Dohnal noted that Babcock's "failure to follow multiple medical recommendations to cease smoking and drinking; exercise; maintain a better diet; and lose weight, contributed to the difficulty in the regulation of his impairments." (R&R at 15.) Judge Dohnal also considered the opinions of Dr. Nancy Powell and the two non-examining physicians in concluding that the ALJ's RFC determination was supported by substantial evidence.

Babcock objects to Judge Dohnal's conclusion, reasoning that he did not have enough money to pursue adequate medical treatment for his limitations, particularly his blood pressure problems. As the Court has explained, applicable regulations make an applicant's inability to pay for treatment a justifiable cause for his failure to follow prescribed treatment, provided the applicant pursues all community resources enabling him to obtain treatment. *See* 20 C.F.R. §§ 404.1530, 416.930; SSR 82-59, 1982 WL 31384, at *4.

Judge Dohnal found substantial evidence in the record to support the conclusion that Babcock's financial condition alone did not prevent him from following prescribed treatment. On this issue, Judge Dohnal made two relevant points. First, Judge Dohnal noted that "once Plaintiff sought financial assistance for his medical problems, he received it." (R&R at 13.) In support, Judge Dohnal relied on evidence demonstrating that, in July 2008, Babcock qualified for completely subsidized medical care through a local hospital and began seeking more medical

9

treatment at that time. (R. at 184, 195.) Judge Dohnal also pointed out that treatment personnel told Babcock on numerous occasions to stop smoking and consume less alcohol. (R. 41-42, 196-99, 211-17, 281-82.) Judge Dohnal asserted that Babcock's repeated and intense use of alcohol and cigarettes "begs the question of how he afforded such items when he allegedly could not afford medical care." (R&R 14.) Citing this evidence, Judge Dohnal concluded Babcock did not exhaust all community resources available for the treatment of his limitations. Because he found substantial evidence supporting the ALJ's judgment, Judge Dohnal applied the proper standard in assessing the ALJ's conclusions regarding Babcock's treatment of his limitations.

B.  **The Court should not consider the new evidence Babcock offers in support of his application.**

In his objection to the R&R, Babcock offers evidence from a physician who evaluated his disability status after the ALJ rendered his decision. A district court reviewing an ALJ's decision cannot consider evidence outside the record in front of the ALJ. *Smith v. Chater*, 99 F.3d 635, 638 n.5 (4th Cir. 1996). A district court can order evidence presented to the Commissioner on remand if (1) the evidence is relevant to the determination of disability at the time the application was filed, (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him, (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner, and (4) the claimant makes a general showing of the new evidence to the reviewing court. 42 U.S.C. § 405(g); *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985). *See Miller v. Barnhart*, 64 Fed. App'x 858, 859-60 (4th Cir. 2003).

In a report completed in March 2011, psychologist Dr. Tawny Hiatt disagrees with the ALJ's judgment that Babcock is not disabled. After an examination, Dr. Hiatt concluded

Babcock has a serious depressive disorder and socialphobia. She concludes he would have difficulty performing work functions.

Dr. Hiatt's report is immaterial, because it is insufficiently forceful to upset the ALJ's judgment under the applicable standard of review. In order to establish that a limitation is sufficiently severe to merit a finding of disability, the applicant must demonstrate that the limitation "significantly limits [his] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). The ALJ concluded Babcock's mental limitations were not severe at just the second step of his analysis. The ALJ discounted the evidence of Babcock's psychological limitations, explaining that his anxiety and depression caused only "mild restrictions" in Babcock's daily activities, "mild difficulties" in social interaction, and "no deficiencies of concentration and attention." (R. at 16.) In support, the ALJ relied on Babcock's own testimony, which established that Babcock socialized with family, lived alone and independently, and had no trouble concentrating. (R. at 16, 156.) Dr. Hiatt's report tells a different story, and on its face it appears worthy of the Commissioner's attention. That said, this Court is limited to determining whether the ALJ's conclusion rested on "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Johnson*, 434 F.3d at 653. Under this standard, and given that the ALJ's conclusion regarding Babcock's psychological limitations came at only the second of five steps, it is unlikely that Dr. Hiatt's report would alter the ALJ's conclusion. *Borders*, 777 F.2d at 955.

Moreover, Dr. Hiatt's report is not "new" as the term is defined in § 405(g). The new evidence must "relate[] to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.970(b). The evidence need not have existed during that period; rather, the evidence must shed light on the applicant's disability status during the relevant

11

time period. *Reichard v. Barnhart*, 285 F.Supp.2d 728, 733 (S.D. W.Va. 2003). The ALJ issued his decision on October 1, 2008. Dr. Hiatt's report is dated March 11, 2011. Therefore, the report does not disclose information pertinent to the period before the ALJ's decision. If Dr. Hiatt's report discloses that Babcock's condition has worsened since the ALJ issued his judgment, Babcock may file a new application for benefits. 20 C.F.R. §§ 404.620(a)(2), 416.330(b).

## Conclusion

Because the Court finds that the ALJ applied the correct legal standard and came to a conclusion supported by substantial evidence, Babcock's objections are overruled and the magistrate judge's R&R is adopted as the ruling of this Court. Thus, Babcock's Motion for Summary Judgment is denied, the Commissioner of Social Security's Motion for Summary Judgment is granted, and the Commissioner's decision denying benefits to Babcock is affirmed.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record and Mr. Babcock.

An appropriate Order shall issue.

                        /s/
James R. Spencer
Chief United States District Judge

ENTERED this __18th__ day of July 2011